# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| E.J., *et al.*, | ) |
|     Plaintiffs, | ) |
| v. | )    NO. 3:16-cv-01975 |
| | )    CHIEF JUDGE CRENSHAW |
| CHRYSTAL TEMPLETON, *et al.*, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Minor children E.J., A.B., J.B. #1, J.B. #2, and K.W. filed this action with their guardians Elexecia Martin, Sandra Brien, Jacqueline Brinkley, and Kanisa Davis against Murfreesboro Police Officer Chrystal Templeton, Rutherford County, Tennessee, and the City of Murfreesboro, Tennessee, after agents of Rutherford County and Murfreesboro arrested the minor children and delivered them to the Juvenile Detention Center, a "secure" facility. (Doc. No. 32.) Before the Court is Plaintiffs' Motion for a Preliminary Injunction against Rutherford County to stop the arrest and incarceration of juveniles.[1] (Doc. No. 21.) On April 11, 2017, the Court held a hearing and heard evidence on Plaintiffs' motion. For the following reasons, Plaintiffs' motion (Doc. No. 21) is **GRANTED IN PART and DENIED IN PART**.

## I. FINDINGS OF FACT

This case arises after officers of the Murfreesboro Police Department and the Rutherford County Sherriff's Department arrested all five juvenile plaintiffs.[2] Relevant to the instant motion,

---

[1] Plaintiffs concede that the request for a preliminary injunction against Murfreesboro is moot. (Doc. No. 65.)

[2] The Murfreesboro Police Department arrested E.J., J.B. #1, and J.B. #2, and those arrests are not the subject of the instant motion. (Doc. No. 32 at 11-18.)

deputies from the Rutherford County Sheriff's Office arrested K.W. and A.B. pursuant to its "Always Arrest" policy. After K.W.'s, A.B.'s, and the other juveniles' arrests, the Rutherford County Juvenile Detention Center used its "Filter System" to determine whether all five juvenile plaintiffs would be detained or released pending a detention hearing by the Juvenile Court Judge. Plaintiffs contend both of these policies violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In finding these facts the Court relies on the Verified Second Amended Complaint (Doc. No. 123), all properly-sworn affidavits, the verified juvenile court records, as well as the testimony at the preliminary injunction hearing from Rutherford County Juvenile Court Judge Donna Davenport, Murfreesboro Police Department Chief James Karl Durr, Rutherford County Deputy Sheriff Kerry Nelson, Rutherford County Juvenile Detention Center Chief Rebecca Baskette, and Rutherford County Juvenile Detention Center Director Lynn Duke.

A. ALWAYS ARREST

The "Always Arrest" policy, as explained by Nelson, is fairly simple. A Deputy Sheriff goes to a Judicial Commissioner and explains why there is probable cause that the juvenile committed a delinquent act. If the Judicial Commissioner makes a probable cause finding, she issues a summons, which is at the bottom of the Petition. (E.g., Doc. No. 114-1 at 3; Doc. No. 114-3 at 15 (juvenile delinquency petitions)). After obtaining a "Summons," the Deputy Sheriff must arrest the juvenile and transport the juvenile to the Rutherford County Juvenile Detention Center, a secure facility. The juvenile is taken into custody, in the same way as an adult, whenever a "summons" is issued if it is based on an alleged misdemeanor or felony, or even if it is for a "status" offense. This policy remains in effect. (Ex. 5.)

The origin of this policy appears to be a 2003 Memorandum and accompanying Order by Juvenile Court Judge Donna Davenport. In the Memorandum, Judge Davenport explained: "Attached is a new Order passed down by the Court for procedure IN ARREST of any JUVENILE." (Ex. 9. (emphasis in original)). The Order, as amended on February 14, 2003, stated that "upon the arrest of any juvenile, the arresting officer shall transport the child to the Rutherford County Juvenile Detention Facility . . . ." (Id.) She reaffirmed this Order multiple times, most recently on February 7, 2010. (Ex. 11-12.) While Judge Davenport testified that she did not intend to convey that she preferred that officers arrest a child on every summons issued pursuant to a juvenile petition, Nelson testified that the Sheriff's Department interpreted this Order as requiring the arrest of juveniles after approval of any petition.

Both Judge Davenport and Murfreesboro Police Department Chief James Durr agreed that Rutherford County's "Always Arrest" policy is not required under Tennessee law. Nelson concurred that the official policy of the Rutherford County Sheriff's Office states that the "only way the juvenile will be taken into custody is if there is language on the petition that says pick up and hold, no other verbiage is acceptable." (Ex. 3 at 65 (the Sheriff's Office's official policy)). However, Nelson stated that the way the policy is enforced is to always arrest a juvenile after a Judicial Commissioner approves a juvenile delinquency petition and issues the summons.

B. FILTER SYSTEM

After a juvenile is arrested, transported to the Juvenile Detention Center, and booked or processed, Rutherford County employs the "Filter System" to determine whether to detain the juvenile for up to 72 hours (longer if a weekend is involved) pending a detention hearing before

the Juvenile Court Judge.[3] The intake officer uses the "Filter System" to determine whether to detain a juvenile on a status charge—a charge that only a juvenile can commit, such as a curfew violation—or on a delinquent charge—a charge similar to a "crime" when committed by adults. Captain Rebecca Baskette of the Rutherford County Juvenile Detention Center, who trains the intake officers, explained the operation of the "Filter System."

    The Filter System is used for all juveniles brought to the Detention Center to determine whether to detain them prior to the Juvenile Court Judge's required detention hearing. When a juvenile is arrested on a status offense, the "Filter System" requires an intake officer to detain three categories of juveniles. The officer must detain an "unruly" juvenile who is a "TRUE threat to themselves or the community." (Ex. 6 (emphasis in original)). The officer is also required to detain a juvenile that ran away from home for multiple days and is "deemed a TRUE threat to themselves or the community." (Id. (emphasis in original)). Last, the officer shall detain a juvenile if the juvenile has a probation violation or capias that "goes back" to a status charge. (Id.) The intake officer also has discretion to detain a juvenile if a juvenile violated a valid court order. Baskette testified that, regardless of the "Filter System's" language, the intake officer is never required to detain a juvenile, and the most important factor for an intake officer to consider in each of these circumstances is whether the juvenile is a "TRUE" threat to themselves or the community.

    On a delinquent offense, the "Filter System" requires an intake officer to detain a juvenile if the juvenile is currently on pretrial diversion, under a court order, on conditional release, or on probation. (Id.) If a juvenile commits certain offenses, such as driving under the influence or reckless burning, the "Filter System" also requires the intake officer to detain the juvenile. On any

---

[3] Of course, if the Sheriff Department did not always arrest a juvenile when serving the summons issued pursuant to a delinquency petition, there would be no need for this determination because the juvenile would attend the hearing the date and time indicated in the summons, as the Judicial Commissioner ordered.

other delinquent charge, the intake officer has discretion to detain the juvenile if the law enforcement officer that presented the delinquency petition "feels that the juvenile is a TRUE risk to the community or themselves." (Id. (emphasis in original)). Baskette testified that in any of these situations, intake officers may use their discretion to determine if the juvenile is a "TRUE" threat to themselves or the community. The "Filter System" is included in the Rutherford County Juvenile Detention Center Standard Operating Procedures as a "quick reference" as to whether an officer shall detain or release a juvenile. (Ex. 7 at 57, 60-61.)

C. K.W.'S, A.B.'S, AND J.B. #2'S CASES

On May 6, 2014, Rutherford County Deputy Sheriff Roscoe Sanders witnessed a video of a fight in which K.W. participated. (Doc. No. 123 at 19.) Based solely on this video, Sanders presented a delinquency petition to the Judicial Commissioner against K.W. for misdemeanor assault. (Id.) The Judicial Commissioner issued a summons for K.W. to appear in Juvenile Court on these charges on August 11, 2014, at the Rutherford County Juvenile Services Center. (Id. at 20.) Rather than serving this summons on K.W. and allowing him to appear on his own, and pursuant to the Rutherford County Sheriff's Department's "Always Arrest" policy, Sanders served the summons by arresting K.W. at Oakland High School on May 6, 2014. (Id.)

On September 19, 2014, Rutherford County Deputy Sheriff Christopher Erwin swore out a juvenile delinquency petition against A.B. for two counts of assault, vandalism under $500, and stalking. (Doc. Nos. 114-1 at 2; 114-5 at 1.) Based on the petition, the Judicial Commissioner issued a summons for A.B. to appear in court that same day. (Doc. No. 114-1 at 3.) Will Lehew served the petition by arresting A.B. on September 20, 2014, and transporting her to the Juvenile Detention Center. (Id.)

On April 15, 2016, Murfreesboro Police Department Officer Chrystal Templeton obtained a juvenile delinquency petition for J.B. #2. (Doc. No. 123 at 16-17.) Based on the summons issued pursuant to the petition, Officer Templeton arrested J.B. #2 at his house on April 16, 2016. (Id. at 17.)

Based on Baskette's generalized testimony, the intake officer chose to detain K.W., A.B., and K.B. #2 based on the "Filter System." (See id. ("Once he was transported to RCJDC, KW was incarcerated pursuant to the 'Filter System' policy of RCJDC prior to a probable cause hearing."). The intake officers' specific reasons for detaining any of the three juveniles is not in this record, but the intake officer, it appears, also moved K.W.'s detention hearing from August 11 to May 7, 2014. (See Doc. No. 114-3 at 15 (scratching out the August 11 date and putting in its place May 7). After each of the three juveniles' detention hearings, the Juvenile Court judge only decided to detain K.W. (Doc. Nos. 114-3 at 13; 123 at 18; 114-1 at 5.)

## II. THE STATUTES ON JUVENILE ARREST AND DETENTION

In Tennessee, when an officer presents a delinquency petition that the Judicial Commissioner approves and authorizes a summons, the Juvenile Court Clerk is required to issue a summons. TENN. CODE. ANN. § 37-1-121 (prior to July 1, 2016); 37-1-122 (on or after July 1, 2016).[4] The summons sets a date for the Juvenile Court's probable cause and detention hearing. Id. If the officer is unable to serve the petition on the juvenile or the juvenile does not attend the hearing, "an attachment may issue, on the order of the court, against the (1) [p]arent or guardian; (2) person who has custody of the child; (3) person with whom the child may be; or (4) child." TENN. CODE ANN. § 37-1-122. A child may only be taken into custody pursuant to the provisions

---

[4] K.W.'s arrest took place under the version of the law in effect prior to July 1, 2016. (Doc. No. 114-3.) However, in order to obtain injunctive relief, Plaintiffs must prove prospective harm, making the current version of the law relevant.

6

in Tennessee Code Annotated § 37-1-113(a), which limits taking a child into custody only when there is a court order, pursuant to the laws of arrest, where there is reason to believe that the child has been "neglected, dependent, or abused," or the child is a runaway.

Tennessee requires that when an officer arrests a juvenile and delivers him or her to the Juvenile Detention Facility, the intake officer "shall immediately make an investigation and release the child unless it appears that such child's detention is warranted or required under § 37-1-114." TENN. CODE ANN. § 37-1-117(a) (2016) (unchanged from the pre-2016 version of the Code). Section 37-1-114 addresses when a child may be placed in shelter care or a secure facility.[5] A child may not be detained "or placed in shelter care" prior to the final hearing on the delinquency petition unless there is probable cause to believe that the child has "committed the delinquent or unruly act with which the child is charged" or is a neglected, dependent, or abused child. TENN. CODE ANN. § 37-1-114 (2016) (unchanged from the pre-2016 version of the Code). The standard for detaining a child in a secure facility is even more restrictive—the intake officer "shall not" detain a child in a secure facility unless the child fits into one of the six categories in Tennessee Code Annotated § 37-1-114(c)(1)-(6).[6] If the child fits into one of the six categories, the intake officer must then make a determination that "there is no less restrictive alternative that will reduce the risk of flight or of serious physical harm to the child or to others . . . ." TENN. CODE ANN. § 37-1-114(c)(7) (2016) (unchanged from the pre-2016 version of the Code).

III. STANDING

At the preliminary injunction hearing, the Court asked the parties to submit briefs on whether any Plaintiff has standing to challenge Rutherford County's "Always Arrest" policy.

---

[5] "Shelter care" is defined as the "temporary care of a child in physically unrestrained facilities." TENN. CODE ANN. § 37-1-102(23) (2016). Tennessee law does not define "secure facility." See id. § 37-1-102 (generally).

[6] None of the categories in Tennessee Code Annotated § 37-1-114(c) apply to K.W., A.B., or J.B. #2.

7

Plaintiffs submitted proof that Rutherford County Deputy Sheriffs arrested K.W. and A.B. (Doc. Nos. 114-4; 114-5.) Based on the summons, the Deputy Sherriff arrested K.W. and A.B. as part of Rutherford County's "Always Arrest" policy. (Doc. Nos. 114-3 at 15; 114-5 at 2.) Rutherford County nonetheless argues that K.W. and A.B. cannot show any actual present harm or a significant possibility of future harm. (Doc. No. 115 at 2.) The parties acknowledge that in this putative class action, the Court may award appropriate class-wide injunctive relief prior to a formal ruling on class certification to establish standing. (Doc. No. 56 at 23.) This is because, as Plaintiffs argue, this issue is capable of repetition yet evading review. (Doc. No. 117-1.)

The Sixth Circuit has held that in some cases it may be "unnecessary to certify a class [prior to issuing a preliminary injunction] because the relief necessary to remedy [the wrong] for individual plaintiffs would be identical to that necessary for a class." Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994) (quoting Zepeda v. INS, 753 F.2d 719, 728 n.1 (9th Cir. 1983)). Here, although the Court has not made a ruling on class certification and does not pre-judge the class certification issue, the relief necessary to remedy the wrong for the individual plaintiffs—giving due process afforded by the Fourteenth Amendment to the Constitution—would be the same for all members of the purported putative class.

Because the proof at the preliminary injunction hearing established by a preponderance of the evidence that children continue to be arrested in Rutherford County on summons and are subject to the "Filter System," within hours of their arrests, the claims challenging the "Always Arrest" and "Filter System" are "capable of repetition, yet evading review." Sosna v. Iowa, 419 U.S. 393, 401 (quoting Dunn v. Blumstein, 405 U.S. 330, 333 n.2 (1972)). Even though the controversy may no longer be alive as to K.W. or A.B., "it remains very much alive for the class

of persons" they purport to represent. Id. Accordingly, the Court finds that, at least at this stage, K.W. and A.B. have satisfied their burden that the Court has standing to hear this case.

IV.    STANDARD OF REVIEW

In deciding whether to grant an injunction pending a trial on the merits, the Court must consider four factors: (1) whether the party seeking injunctive relief has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the injunction is not entered; (3) the potential harm the injunction would cause the opposing party or others; and (4) the public interest. Bays v. City of Fairborn, 668 F.3d 814, 818-19 (6th Cir. 2012); Tumblebus, Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005). "These factors are not prerequisites which must be met, but are interrelated considerations that must be balanced together." Ne. Ohio Coalition for Homeless and Service Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006); accord United States v. Contents of Accounts, 692 F.3d 601, 608 (6th Cir. 2011). The Court "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." Certified Restoration Dry Cleaning Network, LLC, v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003)).

V.    ANALYSIS

Rutherford County does not dispute that it will not suffer any harm if the Court grants a preliminary injunction. (Doc. No. 56.) As such, only the first, second, and fourth factors are in dispute.

A. LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs bring this claim under 42 U.S.C. § 1983, claiming that the official policies of Rutherford County are violating Plaintiffs' Fourteenth Amendment procedural due process rights. Rutherford County argues that neither the "Always Arrest" policy nor the "Filter System" are "policies" or "customs" of the county.

To succeed on a claim for a violation of § 1983, a plaintiff must establish that he or she was denied a constitutional right by a person acting under color of state law. Carl v. Muskegon Cty., 763 F.3d 592, 595 (6th Cir. 2014). Municipalities are "persons" for the purposes of § 1983 liability. Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978). However, municipalities cannot be held liable pursuant to § 1983 under a theory of respondeat superior. Id. at 691; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Instead, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Brown, 520 U.S. at 403. The plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id.

Plaintiffs argue that Rutherford County's continuous violations of Tennessee statutes by enforcing its "Always Arrest" and "Filter System" policies violate the juveniles' procedural due process rights under the Fourteenth Amendment to the United States Constitution. (Doc. No. 22 at 8.) Rutherford County argues that the state law gives further protection to juveniles than is required by the Constitution, but its enforcement of its policies satisfies the minimum due process afforded by the Constitution.

To establish a procedural due process violation, a plaintiff must show "(1) [s]he had a life, liberty or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the . . . interest." Janinski v. Tyler, 729 F.3d 531, 541 (6th Cir. 2013) (quoting Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)). At the outset, the Court must determine the threshold question of what, if any, "constitutionally protected liberty interest" is at stake. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "Liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" Fields v. Henry Cty., Tenn., 701 F.3d 180, 185 (6th Cir. 2012) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "State law creates protected liberty interests only when (1) the state places 'substantive limitations on official conduct' by using 'explicitly mandatory language in connection with requiring specific substantive predicates,' and (2) the state law requires a specific outcome if those 'substantive predicates are met.'" Id. at 186 (quoting Gibson v. McMurray, 159 F.3d 230, 233 (6th Cir. 1998)).

*1. Always Arrest*

The Rutherford County Sheriff's Department has a custom of always arresting juveniles on any summons and transporting them to the Juvenile Detention Center, a secure facility, to be processed. While the official policy instructs the deputy sheriffs to serve the summons without arresting the children, Nelson testified that the practice is to always arrest the children on any delinquency petitions. As such, Rutherford County can be liable on its "Always Arrest" policy under the municipal liability theory.

Plaintiffs argue that the liberty interest at stake is to be free from unnecessary arrest and detention, as created by Tennessee law. (Doc. No. 22 at 9-13.) However, "[b]oth the standards and

procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents." Gersein v. Pugh, 420 U.S. 103, 111 (1975). Under the Fourth Amendment, as long as probable cause supports the arrest, the arrest is constitutional. Id. (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Here, it is undisputed that probable cause supported K.W.'s and A.B.'s arrests based on the Judicial Commissioner's probable cause findings. As such, Rutherford County's "Always Arrest" custom, and consequently K.W.'s and A.B.'s arrests, were constitutional.[7] Accordingly, Plaintiffs are not likely to succeed on the merits of this claim.[8]

2. *Filter System*

The "Filter System" is Rutherford County's official policy for determining whether to detain children after arrest pending a detention hearing. While the Standard Operating Procedures recite the statute, they also explain that intake officers use the "Filter System" to determine whether to detain children pending a detention hearing, and provide a "quick reference." As such, Rutherford County can be liable for its "Filter System" policy under the municipal liability theory.

Tennessee Code Annotated § 37-1-117(a) creates a liberty interest because it contains mandatory substantive language requiring a specific outcome if certain prerequisites are met. Fields, 701 F.3d at 186. Specifically, the statutory language is clear that the intake officer "shall . . . release the child," which gives the "particular substantive outcome" that the juvenile must be released. Id. Rutherford County argues that even if state law establishes a state-created liberty interest, the violation of that liberty interest is only a violation of state law and not actionable under

---

[7] Other courts that applied a procedural due process challenge to a juvenile arrest also looked solely to the Fourth Amendment to determine whether the arrests were constitutionally sufficient. See Mabry v. Lee Cty., 168 F. Supp. 3d 940, 943 (N.D. Miss. 2016) (rejecting a procedural due process claim when an arrest that violated state law did not violate the Fourth Amendment); O'Neill v. Kerrigan, No. 11-3437, 2013 WL 654409, at *4 (E.D. Penn. Feb. 22, 2013) (qualified immunity).

[8] It is noteworthy that Murfreesboro changed its policy once it came to light that it was violating state law. Rutherford County has not done so, and by failing to change its policy may increase its risk of a claim against it in state court. See Tennessee Code Annotated § 8-8-302 (sheriff's liability statute).

§ 1983. (Doc. No. 56 at 15 (citing Harrill v. Blount Cty., Tenn., 55 F.3d 1123, 1125 (6th Cir. 1995))). However, "[s]ome state statutes may establish liberty or property interests protected by the Due Process Clause . . . ." Id. at 1125. Here, § 37-1-117(a) creates for juveniles a liberty interest in being released prior to the detention hearing unless they fall under the statutorily-created categories in Tennessee Code Annotated § 37-1-114(c)(1)-(6). Thus, the Court holds that § 37-1-117(a) creates a substantive liberty interest for juveniles to be released pending a detention hearing except under the specific circumstances set forth in § 37-1-114.

The state-created liberty interest in this case is in avoiding incarceration in a secure detention facility. At the hearing, Captain Baskette explained that the Juvenile Detention Center is a "secure facility" because "juveniles can't freely walk out the door. The doors are locked." Judge Davenport testified that "shelter care" includes foster care or another type of care where the juvenile would be free to leave. Under the statute, both "shelter care" and detention at a secure facility are types of "detention." TENN. CODE ANN. § 37-1-102(14). There is no dispute that state law allows Rutherford County to detain a juvenile if there is probable cause that the juvenile committed a delinquent act. TENN. CODE ANN. § 37-1-114(a). Plaintiffs here are contesting Rutherford County's ability to detain them at a secure detention facility prior to the detention hearing when they do not meet the prerequisites set forth in § 37-1-114(c)(1)-(6). Accordingly, the liberty interest here is for the juvenile to avoid detention at a secure detention facility prior to a detention hearing.

There is a federally protected liberty interest in avoiding incarceration in a secure detention facility. See Wilkinson, 545 U.S. at 222 (finding a federally-protected liberty interest to avoid placement in a supermax prison); see also Fields, 701 F.3d at 186 ("An expectation of release may qualify as a constitutionally protected liberty interest."). In limited circumstances, "a liberty

interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in Sandin v. Conner, 515 U.S. 472 (1995)." Wilkinson, 545 U.S. at 222. The "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Id. at 223 (quoting Sandin, 515 U.S. at 484). Applying that standard to juvenile detention, the Court is convinced that detaining a juvenile in a secure detention facility departs drastically from the "ordinary standards" of juvenile detention. Whether the juvenile is placed in shelter care or released, the juvenile would have some form of freedom not to be locked in a cell. Instead, in Rutherford County, a juvenile who may not meet the prerequisites of § 37-1-114(c)(1)-(6) may nevertheless be locked in a cell, unable to leave, solely because the intake officer believed it was in the child's best interest. As being detained in a secure facility drastically departs from the "ordinary standards" of juvenile detention, the Fourteenth Amendment protects juveniles from the denial of their liberty interest in avoiding incarceration in a secure detention facility prior to the detention hearing.

Next, the Court must determine what process is due to the children in order to determine whether Rutherford County afforded them adequate process prior to incarcerating them pending their detention hearings. To determine what procedural safeguards are required, the Court must balance four factors: "(1) the private individual's interests, (2) the government's interests, including the fiscal and administrative burdens at stake, (3) the value of the suggested procedural requirements, and (4) the risk of erroneous deprivation of the individual's rights that is inherent in current procedures." United States v. Brandon, 158 F.3d 947, 953 (6th Cir. 1998) (citing Mathews v. Edridge, 424 U.S. 319, 335 (1976)). The proposed procedural requirement is essentially that

"some kind of inquiry should be made by a 'neutral factfinder' to determine whether the statutory requirements for [secure detention] are satisfied." Parham v. J.R., 442 U.S. 584, 606 (1979). As in the case of E.J. and J.B. #1, Rutherford County can release the juveniles to their parents or it must make a factual finding sufficient under § 114.

At this preliminary stage, where the Court is only determining whether Plaintiffs have a "likelihood of success on the merits," the Court need not decide this issue, especially given that Rutherford County did not address it. The proposed procedural requirement is narrowly-tailored for the preliminary injunction purposes, and the Court is not deciding what process may be due until after a trial on the merits. It is solely imposing the minimum requirement to prevent juveniles from being incarcerated without due process of law prior to the detention hearing.

Overall, Plaintiffs have shown a likelihood of success on their claim that the "Filter System" violates their procedural due process rights. Rutherford County should never have arrested K.W. or A.B., but instead should have allowed him to appear on a summons. When it did decide to arrest K.W. and A.B. for violating Tennessee law, as well as when Murfreesboro arrested the other three juveniles, the intake officer should have made a determination of whether the juveniles could be detained under § 114. The intake officer then would have released all five juveniles to the custody of their parents because they did not fit in any of the categories under § 114(c). Instead, K.W., A.B., and J.B. #2 each spent up to three nights in jail before their detention hearings. As such, this factor weighs in favor of granting a preliminary injunction.

B. IRREPARABLE HARM

Plaintiffs argue that children in Rutherford County are suffering irreparable harm every day through Rutherford County's illegal detention of them in a secure facility. (Doc. No. 22 at 17.) The Court agrees. The juveniles that are arrested in Rutherford County are being deprived of their

15

procedural due process rights, which is unquestionably irreparable harm. Connection Distributing Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998) (deprivation of a constitutional right "constitutes irreparable injury sufficient to justify injunctive relief."). The harm is especially great because the incarcerated persons are juveniles. Juveniles are not as mature as adults, which leads to "recklessness, impulsivity, and heedless risk-taking," as seems to be the case with K.W. Miller v. Ala., 567 U.S. 460, 132 S.Ct 2455, 2464 (2012) (citing Roper v. Simmons, 543 U.S. 551, 569 (2005)). This makes juveniles more likely to be rehabilitated after committing a delinquent adult than an act who commits a crime. Id. (citing Roper, 543 U.S. at 570). Unfortunately, "all too quickly juveniles subjected to preventative detention come to see society at large as hostile and oppressive and to regard themselves as irremediably 'delinquent.'" Schall, 467 U.S. at 291 (Marshall, J., dissenting). "Such serious injuries to presumptively innocent persons—encompassing the curtailment of their constitutional rights to liberty—can be justified only by a weighty public interest that is substantially advanced by the statute." Id. at 292 (Marshall, J., dissenting).

As such, this factor weighs in favor of granting a preliminary injunction.

C. PUBLIC INTEREST

The public interest also weighs in favor of granting a preliminary injunction. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." Liberty Coins, LLC v. Goodman, 748 F.3d 682, 690 (6th Cir. 2014). As such this factor also weighs in favor of granting a preliminary injunction.

V. CONCLUSION

For the foregoing reasons, all four factors weigh in favor of granting a preliminary injunction, and the preliminary injunction is **GRANTED IN PART** as enjoining Rutherford County's use of the "Filter System," and **DENIED IN PART** in all other respects.

The Court will issue an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE